United States v. Carney. May it please the court, my name is Lawrence Gerzog and I represent Donna Carney. At the outset, let me point out that, as the court probably knows, Ms. Carney got married after this case was indicted and her name has changed, but I'm going to refer to her as Carney since that's what most of the papers do. I would like to reserve three minutes for rebuttal, and I did not represent Ms. Carney in the proceedings below. What I'd like the court to focus on today is the unreasonable conditions of supervised release that were pronounced here, particularly with regard to Conditions 2 and Condition 3. Condition 2 set a limit of $500 of new credit. I understand, in theory, that the court wanted to ensure that Ms. Carney did not once again try to trick someone or embezzle, steal money from a credit agency. However, a limit of $500 in today's world is essentially nothing. But she can exceed the limit if she gets approval, right? I beg your pardon, Judge? She can exceed the limit if she gets approval, right? Not for new credit, as I understand it. That wasn't in there. In any event, isn't the standard condition that the guidelines, not the standard, but the special condition that the guidelines recommend it wouldn't impose any limit, right, at all? That's correct. So by putting a limit of $500, the district court's being more flexible than the guidelines would have recommended. Well, I think- But there is approval, right? Well, you must not incur new credit charges above $500 or open additional lines of credit without the approval of the probation officer unless you're in compliance with the monthly payment schedule, meaning the restitution. So if she's in compliance with the restitution schedule, she can open up as much credit as she wants. And even if she's not in compliance, she can take on credit above $500 with approval. Well, the problem- That doesn't seem like it's a- The problem with that, Your Honor, is that another problem with the order of supervised release here, which I was going to get to at the end, is that $160 a month on income of about $890 is unreasonable and essentially unattainable. Okay, so just to be clear, so the argument that the special condition is unreasonable relies on the notion that the restitution order is unreasonable. Is that right? Essentially, yes. So if the restitution order were reasonable, then the special condition would not be. Assuming that the same, that Ms. Carney could get permission, I mean, there's anything, you know, a new refrigerator, a new stove, four tires for your car. All those things are more than $500. And she certainly doesn't have $500 in income to pay for any of those things. If she was able to get credit at a reasonable interest rate and for a reasonable term, she then might be able to buy those things, which are essentially necessities. Not like food, but things that we expect someone to be able to buy. So you're just arguing that somebody should be able to open up new lines of credit even if they're outside the payment schedule of restitution. That would mean that the recommended special condition of the guidelines would always be unreasonable, right? I'm sorry, I didn't catch that. I mean, your argument that, like, well, you know, you need to buy a refrigerator or whatever. That's an argument against the special condition even that the guidelines recommends in the ordinary course. Well, the guidelines, the fact that the guidelines recommends it doesn't mean that it's okay to. In her circumstances. In her circumstances. Okay, so the circumstances of her is that you just think it's impossible for her actually to meet the payment schedule. Frankly, either the payment schedule or the limit. You know, at any time she wanted to make, they're not even really major, major purchases. They're purchases that we all presumably have made from time to time. And so your argument that she can't meet the payment schedule is that the PSR says she has a negative monthly cash flow, right? Even if she didn't judge, even if she. Yes, that is, of course, the case. But, of course, the financial statements on which the PSR relies also says that she spends $65,000 a month on utilities, right? Well, it does say that. I don't understand how that's possible, frankly. Well, right, which means that it's not completely obvious that she does have a negative cash flow. Even if she didn't have a negative cash flow, what the PSR suggests is that her monthly income is less than $900. Now, how, you know, I wasn't there, so how the $60,000 number was reconciled with a monthly income of $900, I don't know. But assuming that the $900 itself was correct, $150 out of $900 does not leave, you know, that $900 is a little over $10,000 a year, which is considerably below, as I understand it, the federal. Didn't the court make clear that Carney could petition at any time to modify the restitution order based circumstances required that? Well, it's certainly possible that she could have, but the law requires that the judge explain and legitimize the order going in, and that is our position. But to the extent that there was some degree of uncertainty about the precise economic circumstances which there may have been, that there was a relief valve, you could come back, and the court made that clear. I don't know necessarily, Your Honor, that the point being that with a $900 income, that this was inherently unfair. There are also, I mean, there's a number of other arguments in the brief. If, I don't know if I have time to get to the third portion, which was mental health that was required. I mean, she has a history of paying $60 monthly in restitution, right? Yes. So she was paying more than nominal amounts. So she has a payment history that was… I mean, $150 judges almost three times $60. All right, so you're saying the district court would have been right to say she has to pay $60 a month, but it's wrong to say $150 even if the $150 is subject to modification. I think what the district court should have done is whatever number it set, it should have explained why that was the appropriate number, since it's unlikely that with these kinds of numbers, Ms. Carney is ever going to be able to actually make the full restitution. She's, I think, 67 years old, and even at $60 a month, that would not pay off the total amount. So now you're saying it's unreasonable because it should be more aggressive to make sure… It should be explained, and it should be reasonable, and it was neither. Well, a restitution order is mandatory, right? The district court also says, I'm going to forego a fine because I think whatever money is available should go to restitution because that's more important. She, I think, did say that, yes. So what other explanation is necessary to justify it? Is why that percentage of someone's income is felt to be necessary. It's good that she didn't… So we have documentation that she's making $900 a month at least, but the financial statements seem kind of unreliable because it reflects $65,000 in utility payments. Well, that's got to be… And then she has a history of paying $60 a month, and then the district court says a number of times that it could be modified if it doesn't work. Yes, it does, but it's our position that there should be an explanation when the law requires that there should be an explanation of why the judge came up with that. Also, number three, the mental health thing, same problem. The judge didn't explain why a mental health, mental health was necessary in a case involving, you know, what is basically simple fraud. I mean, I don't think you have to have a mental health… And didn't Carney say herself that she goes to counseling, that she had suffered a traumatic brain injury… She did. …and that she had struggled with mental health? Well, she goes to counseling for other things like the traumatic brain injury that she apparently received from her first husband who was abusive to her, but that… In fact, the PSR has reflected a psychologist-recommended therapy, right? But not for, not directed to the offense that she committed. The offense that she committed is not, mental health is not really relevant to the offense she committed. It was simple… In a longstanding fraud… Do you really think that… …would it be related to mental health issues? I mean, you… Does it have to be? How closely related does it have to be to the offense? You're not a mental health professional, and I'm not either, Judge, but it doesn't seem to me that simple, basically simple theft, simple fraud, she just didn't tell. She knew that if she told the authorities that she had married the landlord, she would stop getting the benefits, so she didn't tell. I mean, that doesn't require a mental health imbalance, and the fact that she had mental health treatment in the past for other things… It's kind of weird that you're making that argument. I mean, you could say, well, I didn't like that person, so I killed him, and it's kind of straightforward thinking rationally, but like when people commit crimes, usually you think there might be some kind of antisocial behavior, and it might be that under the circumstances, mental health treatment is appropriate. As someone who makes a living doing criminal defense, I certainly wish that there were more mental health available to criminal defendants, but having said that, I don't think this is one of those crimes that would indicate… Even though she herself said she benefited from counseling? For other reasons, Judge. What are those other reasons? Her PTSD and other things that she wasn't acknowledging that…she never acknowledged that. Okay, so you're saying that it's unreasonable unless there's some specific finding that the particular crime resulted from the particular mental infirmity that the treatment would address. My argument is that the judge would have to find that mental health treatment would lead to a situation where she would not have in the past and not in the future committed the same crime. She also had her own therapist. The special condition there required that there be a therapist supplied to her by the probation department. She was very, very adamant that she had an excellent relationship with the current therapist and felt that it was unfair to her to require potentially a new therapist. Thank you. May it please the court. My name is Heather Cherry. I represent the government, and I represented the government below. From at least 2003 to 2019, Ms. Carney fraudulently received Section 8 tenant-based housing assistance. After pleading guilty, she was sentenced to a below-guideline sentence of 30 days imprisonment, a guidelines term of supervised release of three years, and order to pay restitution. With respect to the term of supervised release, there was no procedural or substantive error. The district court explained the sentence as required, and although longer than her short term of incarceration, it's not a rare case that was shockingly high and requires reversal. With respect to the three special conditions that she now appeals and that the court imposed, the district court adequately explained the purpose of these conditions. They were reasonably related to the sentencing factors, and they involved no greater deprivation of her liberty than reasonably necessary. Finally, with respect to the order of restitution to be paid at $150 per month, the district court properly considered Ms. Carney's financial situation and her future financial prospects. The schedule was a proper exercise of the district court's discretion. Well, it wasn't proper, so I don't know. If the district court accepted the PSR finding that she had a negative monthly cash flow, how could she keep up with that schedule? I think it was clear to everyone that the financials that were submitted were not accurate, and that the district court properly looked at not only her current financial situation, but her future financial prospects, and correctly determined. Did the district court say any of that? The district court didn't, when she was pronouncing the $150 a month specifically, say that she believed that the financials were inaccurate. But I think given other discussions that happened on the record, for example, the $65,000 monthly payment, nobody thought that she was making $65,000 in monthly payments for her utilities. Everyone understood that, based on the record, that that was the fact that she had not paid an electric bill and other utilities for years, and she owed $65,000. The financials also included, for example, a monthly mortgage payment. At this point, and as the record clearly reflects, Ms. Carney no longer owned that home. She had claimed it to both her daughter and her new husband. And so there was no need for her to pay the monthly mortgage payments. That would not be required of her. Is it a problem for the district court to accept the PSR, but then to sort of rely on the idea that everybody knew that it wasn't really accurate? I mean, shouldn't the district court explain that conclusion? Well, I think with respect to the restitution payments, the district court is required to basically say that it doesn't have to detail its factual findings. It just basically says it considered the factors, and that's what the district court said. The district court said that I looked at Ms. Carney's current financial situation, as well as her future financial prospects, and I determined that $150 was appropriate. And Ms. Carney, at the time, didn't object, didn't make any statements that she was not able to pay $150 a month. And so it was appropriate and should not necessarily be overturned. In addition, Ms. Carney is given the opportunity to come to probation, come to the court, and argue that given her financial situation, the $150 wasn't appropriate. Unless the court has further questions. But what about the condition about the $500 limit? Shouldn't she be able to buy a refrigerator? Well, there's nothing stopping her from buying a refrigerator. The court, first of all, I think that's one of the special conditions that is essentially a standard condition when certain triggering happens, right? So she was required to pay restitution. It's mandatory. So this is a special condition that the policy statement requires to be imposed when a restitution order is made. That is correct. Obviously, in this case, the district court tweaked it by giving her the ability to take on credit below $500. But in general, Ms. Carney could come to probation and ask for permission if she needed to. I think that the purpose of the special condition is so that Ms. Carney thinks about when she's making payments that she has to make these restitution payments. She can't just take on credit willy-nilly and ignore her restitution payments. Because she's required to pay restitution. So I think it's an appropriate condition. I think it is one of these special conditions that is essentially treated as a standard condition. I don't think there was anything inappropriate with it. And again, if Ms. Carney has an issue and needs to take on credit, she can go to probation, show her financials, explain her situation. And it can be determined either by probation or eventually the district court if necessary. How about the requirement that she participate in a mental health treatment program? Was that adequately tethered to the offense? Or did it need to be? Well, it needs to, I think, be tethered to the sentencing factors. And it was. I mean, if you look at the history and characteristics of Ms. Carney, she certainly had and admitted to having mental health needs. I think you could also say that it was tethered to the offense in the sense that Ms. Carney at the time had said that she had PTSD because of the abuse that she had sustained, both mental and physical, from her ex-husband. And that one of the reasons why she participated in the crime was because of her relationship with her ex-husband. And he was the landlord. He was the one who was making her participate in this crime. She was giving him most of the money. This was all on the record and discussed at sentencing and throughout the proceedings. So there's a relationship between the mental health issues and the commission of the crime. I guess maybe this is just an abstract question, but as a general matter, does there need to be? So if somebody commits a crime and then it just turns out that they have mental health issues, can the district court order mental health treatment as a special condition? So I think it's based on the sentencing factors. It's reasonably related to the sentencing factors. So those things like history and characteristics can certainly come into play when you think about what the special conditions should be during supervised release. Thank you. And so for that reason, I ask that you affirm the district court's rulings. I don't want to say I agree with Judge Manasci because he may not have meant it this way, but the district court judge certainly should have made a better record as to exactly what Ms. Carney's financial situation is. The notion that she had $63,000 in bills as opposed to debts. This woman was getting disability benefits. This woman, her income wasn't even from a job. It was from government benefits. And it was just manifestly clear that she had no money. I mean, the scheme was a crime to be sure, but it wasn't- You're arguing that there should be no limit on her accruing additional $500 in debt. I mean, if she has negative cash flow and she's impoverished, and $150 a month is unfeasible, then it looks like any credit in addition to $500 would be an extravagance. If you look at it, you can get, you know, Daisy Penny may be running an offer where you get no interest for three years, then the payment is whatever it is, $30 a month. It's a different situation. You don't have to pay the $500 at once, or if it's even $800 is the point. There are some things that you have to have, and $500, in my view, is too small a limit. It doesn't have anything to do with the fact that she did engage in this fairly massive fraud in total of well over $100,000. That's a crime to be sure, and she was properly convicted of that. But to limit her in the circumstances of poverty that she lives in that way, I think, is inappropriate. Thank you. Thank you both, and we'll take the matter under advisement.